IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DANIEL SMITH,

    Plaintiff,                                                                        OPINION and ORDER

    v.                                                                               20-cv-182-wmc

SALAMULLAH SYED, RANDALL BENNINGER,
ROBERT FISHER, ANGELA HODGE,
RACHEL PAFFORD, HENA KAUSAR
and LUCINDA BUCHANAN,

    Defendants.
_____

        Previously incarcerated at Columbia Correctional Institution ("Columbia") and proceeding in this lawsuit under 42 U.S.C. § 1983, *pro se* plaintiff Daniel Smith proceeds in this lawsuit against three Columbia Health Services Unit ("HSU") employees and two corrections officers for their alleged failure to respond appropriately to his need for adequate footwear and pain relief for feet and back conditions.  The court previously granted Smith leave to proceed on his Eighth Amendment deliberate indifference and Wisconsin negligence claims against defendants Salamullah Syed, Randall Benninger, Robert Fischer, Lucinda Buchanan and Rachel Pafford.  Defendants have moved for partial summary judgment on just the claims against Dr. Syed, Buchanan and Pafford.  (Dkt. #34.)  Because the evidence of record would not permit a reasonable trier-of-fact to find that these three defendants addressed Smith's feet and back conditions with deliberate indifference, the court will grant defendants' motion on the merits as to his Eighth

Amendment claims for these three defendants, as well as relinquish jurisdiction over his state law claims against them.

Of course, Smith's claims against the remaining defendants, Benninger and Fischer, will proceed to trial. Accordingly, along with this opinion and order, the court will issue a trial preparation order that will describe trial logistics and all remaining deadlines.

## UNDISPUTED FACTS[1]

**A. Background**

Smith was incarcerated at Columbia at the times relevant to this lawsuit. The defendant HSU employees were all Columbia employees during the relevant time and include: Dr. Syed, a physician who worked as an advanced care provider ("ACP"); Buchanan, a Health Services Manager ("HSM"); and Pafford, a Medical Program Assistant Associate ("MPAA").

At Columbia, inmates with health issues submit health service requests ("HSRs") that nurses triage based on medical need, then schedule those requiring a medical appointment for a nursing sick call. Although HSMs and ACPs do not typically receive or review HSRs, unless forwarded to them for their review, Dr. Syed occasionally responded

---

[1] Unless otherwise noted, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support, all viewed in a light most favorable to the plaintiff as the non-moving party. That said, defendants fairly point out that some of Smith's responses are argumentative or non-responsive, or cite to evidence that does not support his version of the facts. Those objections are upheld and noted as appropriate in the recitation of the facts. *See Proc. to be Followed on Mot. For Summ. Judg.*, § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation).

to Smith's HSRs, as explained below. Regardless, nurses and HSMs cannot place medical orders for treatment, refer patients for specialist appointments, or overrule physician treatment decisions.[2]  In particular, once an ACP orders an offsite visit, the MPAA schedules the appointment.

### B. Smith's Medical Care for his Feet and Back Conditions

During the relevant time frame here, Smith suffered from chronic pain in his feet. In October 2014, Dr. Audra Smith, a podiatrist at the University of Wisconsin ("UW"), specifically diagnosed him with bilateral posterior tibial tendinitis and flat feet; she further fitted him for custom orthotics. In February 2015, Dr. Syed saw Smith for the first time. During this visit, Smith informed Dr. Syed that the orthotics were unhelpful and asked to wear his own shoes. Dr. Syed agreed with Smith's request and ordered that he be allowed to wear his own shoes. In March of 2015, however, Dr. Syed responded to Smith's HSR, asking for permission to buy shoes from an outside vendor for more than 75 dollars, stating that he "did not deal with shoes." (Pl.'s Ex. 3 (dkt. #49-6) 1.)

At an April 2015 follow-up appointment with Dr. Smith at UW, Smith reported that the custom orthotics he was using relieved the pain in his feet, but caused him hip and back pain, and that while removing the orthotics relieved most of the hip and back pain, the pain in his feet would then return. As a result, Dr. Smith recommended that

---

[2] Smith purports to dispute that Buchanan as HSM and other HSU staff could override doctors' orders by asserting that Buchanan refused to comply with Dr. Syed's orders approving his buying new shoes. That argument is addressed in the Opinion section.

Columbia allow Smith to wear his preferred shoe, Nike Air Max, and that he be allowed to order that shoe from an outside vendor.

Later in April, Dr. Syed met with Smith and told him that he would follow up with security about these special-order shoes. Dr. Syed then directed that Smith be allowed to "order his shoes from outside vendor if ok with security or please refer to Special Needs Committee [("SNC")]." (Def.'s Ex. 1000 (doc. #37-1) 28.) Although difficult to read, a July 2015 note in Smith's medical chart similarly states that he has "[p]ermission to buy shoes from outside (e.g., 'airmax') vendor as per recommendation of [UW podiatrist] A. Smith." (Pl.'s Ex. E (doc. #49-2) 1.)

In September 2015, an MRI of Smith's spine showed mild degenerative disc disease. At an MRI follow-up appointment, Dr. Syed explained to Smith that he should contact security to address his shoe issue (presumably because he had already approved Smith's request to purchase shoes from an outside vendor),[3] prescribed Tylenol and naproxen, and referred him to neurosurgery. In March 2016, Smith saw a UW neurosurgeon, who determined that his back pain was not attributable to any specific cause and recommended physical therapy and non-steroidal anti-inflammatory drugs. Dr. Syed then ordered treatment consistent with the neurosurgeon's recommendation.

In May 2016, Smith again complained to Dr. Syed about pain in his feet and that his current shoes did not fit. In response, Dr. Syed again referred Smith to the SNC, noting that Smith had received shoes but reported that they did not fit. Because he referred Smith

---

[3] Smith purports to dispute that Dr. Syed told him that the shoe issue should be taken up with security, but the evidence that he cites in support -- Dr. Smith's appointment notes and Dr. Syed's declaration -- does not support the dispute, so this fact remains undisputed.

to the SNC, Dr. Syed attests that he did not follow-up with podiatry. (Syed Decl. (dkt. #41) ¶ 18.) Dr. Syed also prescribed Smith with duloxetine because Smith complained of ongoing pain. And when Smith did not tolerate duloxetine, he later switched the prescription to gabapentin.

At a September 2016 meeting, the SNC denied Smith's request for HSU-issued shoes, noting that he could purchase personal shoes from an approved vendor. (Dkt. #50-2 at 48.) About a year later, in August 2017, Smith complained of lower back pain in an HSR directed to Dr. Syed. HSU staff triaged the request and referred him to a nurse, who determined that he had sciatic pain and provided him with a muscle rub and stretching exercises. Later that month, Smith presented with severe back pain, and an on-call doctor ordered a Toradol injection.

In September 2017, Dr. Syed saw Smith about his shoulder, neck, feet, and lower back pain. Dr. Syed did not address his lower back pain at the appointment due to time constraints, but he once again referred Smith to the SNC for Apex shoes, which Smith received in November.[4] In November, Dr. Syed saw Smith for lower back pain, and Smith indicated that the pain came and went once or twice every couple of months. However, Dr. Syed did not provide treatment because Smith was not in pain at that time and instead recommended that he submit an HSR when he felt pain.

On March 19, 2018, Dr. Syed saw Smith again for chronic lower back pain, prescribing him tramadol and ordering physical therapy. If it was acceptable to security,

---

[4] Smith would also dispute this fact, asserting that he did not know about the Apex shoes, but his medical record again shows that Dr. Syed referred the Apex shoe issue to the SNC. (Def.'s Ex.1000 (dkt. #37-1) 23, 34.)

Dr. Syed also ordered that Smith be allowed to wear his own shoes. In June 2018, Dr. Syed saw Smith for lower back, feet and ankle pain. At that time, Smith requested ibuprofen and an ice bag for his lower back, and Dr. Syed fulfilled Smith's request, prescribing tramadol and ordering an MRI of his lower back. Later that month, Smith complained of extreme back pain, and Dr. Syed immediately ordered a Toradol injection.

In July 2018, the second MRI showed mild degenerative disc disease and foraminal stenosis, but no new symptoms. Nevertheless, in October 2018, Smith was seen by an orthopedic specialist at UW, Dr. Houtan Taba, who diagnosed him with radiculopathy and disk herniation. Among other things, Dr. Taba recommended a steroid injection and podiatry evaluation to fit Smith for orthotics again. Notably, Dr. Taba's order provided no explanation for Smith's podiatry referral. (*See* Def.'s Ex. 1000 (dkt. #37-1) 2-5.)[5] In response, Dr. Syed referred Smith for a steroid injection, which Smith received on October 24, 2018, but Dr. Syed declined to refer Smith to podiatry, believing Smith had the shoes that he needed. Smith disputes this, asserting that Dr. Syed knew that he did not have appropriate shoes because the SNC had denied his request for certain shoes.

Columbia put Dr. Syed on administrative leave on October 31, 2018, and he did not treat Smith again. Instead, on March 23, 2019, Smith submitted an HSR following-up on a two-week-old HSR in which he sought an ACP appointment for shoulder, back, and urological issues. Because the HSU was short-staffed, HSM Buchanan reviewed this HSR and responded on March 29, 2019, that it was best for him to have a nursing call, rather

---

[5] Smith's argument that Dr. Taba's podiatry referral showed that his feet and back conditions were linked is addressed in the Opinion section as well.

than wait to see an ACP. (Buchanan Decl. (dkt. #39) ¶ 22.) Instead, Smith actually saw multiple ACP's. Specifically, he met with Dr. Roman Kaplan on April 1, 2019, to discuss his shoulder, and with Dr. Hena Kausar on April 11, for his lower back pain and urological troubles. Dr. Kausar advised Smith to continue taking his prescribed pain medications. (Def.'s Ex. 1000 (dkt. #37-1) 70.) A few days later, Smith sent an HSR to Buchanan, stating that, among other things, he was still waiting for an appointment with podiatry. Buchanan responded that she did not see a podiatry referral in Dr. Kausar's notes, and he would need to make another appointment.

On May 3, Smith also had a six-month, follow-up appointment with Dr. Taba, who recommended another steroid injection. On June 26, Dr. Kausar further referred Smith to the spine clinic for a steroid injection. In July, Smith wrote a letter to Buchanan asking, among other things, to enter into the inmate database the order allowing him to buy outside shoes. (Pl.'s Ex. N (dkt. #49-11) 1.) The record does not show that Buchanan responded.

On September 19, Smith also explained during a nursing call with Carla Reed that there was still no order in the inmate database allowing him to order special shoes, despite what he believed were doctors' orders that allowed him to purchase his own shoes. Nurse Reed noted in Smith's medical record that Smith reported that he tried Apex shoes, but that they were too narrow, and that although Smith was wearing his Nike Air Max shoes that day, Smith reported that those shoes were old and the support they provided was decreasing. (Def.'s Ex. 1000 (dkt. #37-1) 72.) Reed further noted, "Plan discussed with patient that this order will be reflected in [the inmate database] and he should order the

shoes he needs as discussed with UW Health MD. Audra Smith. Union [Supply] Direct is the shoe company that [Columbia] is currently working with, offers different widths." (*Id.*) That same day, Nurse Reed sent Smith a letter stating that she had spoken with Buchanan and that Smith would need to order his shoes from Union Supply.[6] (*Id.* at 43.)

On October 7, Smith submitted an HSR to HSM Buchanan's attention, complaining that he was still waiting for a steroid injection in his back. The next day, a different nurse responded that the appointment was scheduled with Waupun Memorial Hospital Pain Clinic ("WMH"). About two weeks later, Smith submitted another HSR to Buchanan's attention, asking about his scheduled injection, to which Nurse Reed responded that he was scheduled for the injection in mid-November. On November 5, 2019, Dr. Justin Ribault postponed the injection until after Smith was evaluated by a physical therapist.[7]

On January 8, 2020, Smith submitted another HSR to Buchanan, complaining that he had not been provided with his latest MRI results, and he had still not received a steroid injection for his lower back. A different HSU staff person responded that physical therapy was scheduled, and an appointment with an orthopedic specialist was pending. In April 2020, MPAA Pafford, in responding to another Columbia employee's question about

---

[6] Smith asserts that Buchanan knew that he was allowed to order shoes from an outside vendor and that the HSU had previously ordered shoes for him. However, these assertions do not create a genuine dispute of fact as to whether Smith could order shoes from Union Supply Direct. The court will address Smith's separate argument that Buchanan interfered with entering doctors' orders permitting him to purchase special shoes in the Opinion section below.

[7] Smith denies knowing that Dr. Ribault postponed the injection, but this asserted lack of knowledge does not create a genuine dispute of fact as to whether Dr. Ribault had, in fact, postponed the injection.

Smith's past referrals for podiatry, noted that Columbia would only send Smith to an outside provider if his feet problems were life threatening.  (Dkt. #49-12 at 4.)

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then to survive summary judgment, the non-moving party must provide evidence "on which the jury could reasonably find" for them.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets and quotation marks omitted).  During summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party; however, this treatment does not extend to inferences supported merely by speculation or conjecture.  *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019).  Here, defendants seek partial summary judgment in their favor on Smith's Eighth Amendment and state-law claims against defendants Syed, Buchanan and Pafford.

  A.  **Eighth Amendment**

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976).  To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  Defendants do not seek judgment on the ground that Smith's feet and

9

back conditions did not constitute serious medical conditions, but rather focus their arguments on a lack of evidence supporting a finding of deliberate indifference.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it.  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Deliberate indifference constitutes *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it.  *Id*. at 837; *see also Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense" (quotation marks omitted)).

A jury may "infer deliberate indifference on the basis of a physician's treatment decision [when] th[at] decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment."  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)).  Disagreement between two medical professionals, without more, is

insufficient to establish an Eighth Amendment violation. *Pyles*, 771 F.3d at 409. The court looks at the "totality of [the prisoner's] medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

### 1. Dr. Syed

Defendants contend that all of Dr. Syed's treatment decisions were appropriate. They point to Dr. Syed's treatment record and his declaration in which he attests that: (1) the standard of care for posterior tibial tendinitis and pes planus (flat feet) was to wear shoes with arch support and pain management as needed; and (2) the standard of care for lower back pain and degenerative disc disease is pain management, physical therapy, and sometimes surgery. (Syed Decl. (dkt. 41) ¶ 37.) Since all of Dr. Syed's treatments fall within these parameters, defendants argue no reasonable jury could find deliberate indifference.

In opposition, Smith points to Dr. Syed's failure to follow Dr. Taba's initial recommendation to refer him to podiatry, and he argues that the referral showed that his feet and back problems were connected. Smith further asserts that Dr. Syed abdicated his responsibility by deferring to the SNC as to whether Smith could order shoes from an outside vendor. Finally, Smith argues that Dr. Syed did not have an effective treatment plan; instead, he only treated his conditions when they flared and prescribed him ineffective pain medication. While a reasonable trier-of-fact might conclude that these decisions by Dr. Syed regarding treatment for Smith's feet and back conditions amounted to negligence, or even gross negligence, they did not amount to deliberate indifference.

11

*First*, as to Smith's feet conditions, Dr. Syed exercised medical judgment in concluding that Dr. Taba's recommendation to refer Smith to a podiatrist for an orthotics fitting was unnecessary since he had already been allowed to wear his own shoes. Even if mistaken, this does not rise to deliberate indifference. Regardless, Dr. Syed's disagreement with Dr. Taba alone is not evidence of deliberate indifference. *Pyles*, 771 F.3d at 409. In addition, when Dr. Taba made his podiatry recommendation in July 2018, he did not provide any context or explanation for his recommendation suggesting that he had reviewed or was even familiar with Smith's footwear history. Although Smith maintains that Dr. Taba's podiatry referral showed that his feet and back conditions were linked, that argument is speculative, especially given that the neurosurgeon who examined Smith's back determined that there was no particular cause of his back pain. *Coleman*, 925 F.3d at 345 (concluding that inferences supported by speculation will not defeat a summary judgment motion).

In contrast, *Dr. Syed* had a basis to part ways with Dr. Taba's October 2018 recommendation. Indeed, by then, Dr. Syed had already been treating Smith's feet issues for multiple years, and he was aware that Smith had rejected custom orthotics as unhelpful, *and* in March of 2018, just a few months before seeing Dr. Taba, Smith had requested that he be allowed to discontinue wearing orthotics in favor of wearing his personal shoes, which Smith found relieved his pain. So, Dr. Syed's decision not to send Smith back to a podiatrist for new custom orthotics does not support an inference that he was consciously disregarding Smith's feet conditions or pain, but rather that Dr. Syed had declined to follow a recommended course of treatment already proven ineffective.

Next, Dr. Syed did not prevent Smith from wearing his preferred shoes, Nike Air Max, because Smith was wearing them at a September 2019 appointment. Even if Dr. Syed's conditional approval of Smith ordering shoes from an outside vendor prevented him from ordering new Nike Air Max shoes, Dr. Syed was attempting to facilitate *Smith's* preferred method for treating his feet conditions. Although Smith argues that Dr. Syed modified an order for the Nike Air Max shoes to show that security or the SNC would need to approve it, that modification is not evidence of a conscious disregard of Smith's serious medical need, but rather merely recognition that final approval must be left to the SNC. Indeed, the record shows that the SNC had the actual authority to make any ultimate decision about Smith being issued new shoes. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job."); *see also Fields v. Rahimparast*, 43 F. App'x 966, 968 (7th Cir. 2002) (concluding that doctor's decision to prescribe alternative treatment, because of prison security concerns, did not amount to deliberate indifference).

Smith also asserts that the Apex shoes that he was fitted for in 2017 did not fit him. Dr. Syed did not ignore this issue but later authorized him, conditioned upon security approval, to wear his own shoes. Accordingly, a reasonable trier-of-fact could not find that Dr. Syed acted with deliberate indifference to Smith's feet conditions by not following Dr. Taba's podiatry recommendation and referring his shoe requests to the security authorities.

*Second*, Dr. Syed's treatment of Smith's back pain similarly does not support a finding of deliberate indifference by a reasonable trier of fact. As an initial matter, "treating pain allows considerable room for professional judgment," *Norwood v. Ghosh*, 723 F. App'x

13

357, 365 (7th Cir. 2018), and the record here establishes that Dr. Syed attempted multiple interventions to treat Smith's pain, *none* of which were clearly inappropriate.  In 2015, after an MRI revealed that Smith had mild degenerative disc disease, Dr. Syed prescribed painkillers -- Tylenol and naproxen -- *and* referred Smith to neurosurgery.  Dr. Syed also followed the neurosurgeon's recommendations for treatment of his back pain, as well as prescribed Smith with duloxetine in May 2016.  Further, when Smith did not tolerate duloxetine, Dr. Syed prescribed him a different drug -- gabapentin.  Moreover, when Smith requested ibuprofen and an ice bag for his back pain in June 2018, Dr. Syed not only fulfilled this request, but also prescribed tramadol and physical therapy.  Later that month, when Smith presented with severe back pain, Dr. Syed ordered a Toradol injection to relieve his pain.  Finally, in October 2018, Dr. Taba ordered a steroid injection for Smith's back pain, which Dr. Syed supported and referred him for the injection.

In short, over the three years that Dr. Syed treated Smith, he tried *eight* different drugs to treat his pain, ordered physical therapy, and referred him to a specialist.[8]  Although Smith does not agree with Dr. Syed's care plan for his pain, a reasonable jury would have to find that he appropriately exercised his professional judgment on this record by following the standard of care for lower back pain and degenerative disc disease.  (*See* Syed Decl. (dkt. 41) ¶ 37.)  And even though Smith wanted to be treated sooner with tramadol, Dr. Syed also exercised appropriate judgment by trying eight medications for his back pain, eventually including tramadol.  *Norwood*, 723 F. App'x at 365; *see Pyles*, 771 F.3d

---

[8] Smith also disputes whether Dr. Syed allowed him to use a wheelchair, but the record shows that Dr. Syed gave him permission to use a wheelchair.  (Ex. 1000 (dkt. #37-1) 21.)  In any event, the denial of a wheelchair is not central to Smith's claims.

at 412 (determining that physician was not deliberately indifferent when he responded to prisoner's pain complaints by prescribing new medications and changing the doses even though the prisoner wanted different treatment). At best, plaintiff might question Dr. Syed's judgment calls as negligent, but *nothing* suggests anything rising to the level of deliberate indifference on Dr. Syed's part. Thus, no reasonable trier-of-fact could conclude that Dr. Syed failed to exercise medical judgment at any juncture of his multi-year treatment of Smith's feet and back conditions, and the court must grant summary judgment on the merits of Smith's deliberate indifference claims against Dr. Syed.

### 2. Health Services Manager Buchanan

Smith's claim against HSM Buchanan arises from her alleged delayed responses to his HSRs and interference with him purchasing shoes from an outside vendor. Specifically, Smith contends that the HSU was understaffed, and Buchanan failed to reply to his July 2019 letter asking for the name of the provider who authorized him to buy shoes from an outside vendor. He also asserts that Buchanan overruled doctors' orders when she did not allow him to buy shoes from an outside vendor.

Even so, the record does not support a reasonable finding that Buchanan was personally deliberately indifferent to Smith's medical needs. First, although five months passed between Dr. Kausar's steroid injection order and the scheduled injection appointment, Smith provides no evidence that the delay was due to Buchanan's disregard of Smith's condition. Rather, it appears that Dr. Ribault eventually cancelled the steroid injection appointment. Second, Buchanan did not delay Smith's podiatry referral in 2019. Indeed, as just discussed above, there is no dispute that Smith did not have a podiatry

15

referral at that time, since Dr. Syed had declined to refer him to a podiatrist. Third, as Smith himself concedes, the HSU was understaffed in March 2019 when Buchanan allegedly took about three weeks to follow-up on Smith's HSR regarding his shoulder, back, and urological issues, making her claimed delay understandable negligence at worst, not deliberate indifference. In any event, there is no evidence that *Buchanan* was even aware of, and ignored Smith's requests. Instead, the record shows that Smith was seen by multiple ACPs in April of 2019, and none of those interactions suggest that any delay Smith experienced impacted his health or that he did not have consistent access to pain interventions at that time. Fourth, even assuming that Buchanan personally saw Smith's 2019 letter asking her to enter orders into the inmate database to allow him to buy shoes from an outside vendor, that request did not fall within her exercise of medical judgment, but rather to an ACP. Similarly, Buchanan telling Nurse Reed that Smith could order shoes through an approved vendor was not an act that implicated her exercise of medical judgment, but instead her relaying the proper procedure for Smith to order the shoes. Further, there is no evidence that the SNC had approved Smith's request to order outside shoes; thus, Buchanan was not required to approve his request. *See Burks*, 555 F.3d at 595. Again, Dr. Syed's latest order approved Smith to wear his own shoes, contingent upon security approval, and Dr. Syed had modified the note in Smith's records suggesting an unconditional approval of the Nike Air Max shoes. Finally, the record shows that Smith was able to purchase and wear his preferred shoe -- Nike Air Max -- because he was wearing them at his September 2019 appointment with Nurse Reed.

Based on all of this evidence, no reasonable trier of fact could find that Buchanan personally, much less deliberately, interfered with the treatment of Smith's feet conditions or overrode any doctor's orders as to his footwear. *See id.* (explaining that deliberate indifference would exist where non-medical staff "prevent[ed] the medical unit from delivering needed care"). Therefore, the court will grant summary judgment to Buchanan on Smith's claims of deliberate indifference against her.

### 3. Medical Program Assistant Associate Pafford

This just leaves Smith's claim that MPAA Pafford acted with deliberate indifference to Smith's conditions when she scheduled his steroid injection at Waupun Memorial Hospital Pain Clinic. However, even if Pafford changed the location of the steroid injection to WMH, this location change alone does not give rise to an inference, reasonable or otherwise, that Pafford prevented medical staff from caring for Smith. *See id.* In any event, as previously discussed, Dr. Ribault, *not Pafford*, cancelled Smith's steroid injection. Finally, while a reasonable trier-of-fact might find that Pafford's April 2020 statement about Smith not being scheduled for a podiatry appointment unless his foot condition was life threatening disturbing, even evidence of indifference, there is no credible evidence that she actually interfered with his medical treatment. On the contrary, there is no evidence that Smith even had a podiatry referral when she made that statement. Thus, the court will grant summary judgment on Smith's deliberate indifference claim against Pafford as well.

B.  **State Law Claims**

While defendants also seek judgment on the merits of Smith's Wisconsin negligence claims on multiple grounds, this court has broad discretion to determine whether to exercise supplemental jurisdiction over such state-law claims. *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997). Here, although the federal claims against Benninger and Fisher remain, "actual dismissal of all federal claims is not required for a district court to exercise discretion afforded it regarding supplemental jurisdiction." *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir. 2008) (emphasis omitted). Rather, the court may consider whether the exercise of supplemental jurisdiction is in the interest of fairness and judicial economy. *See id.* Because the court is dismissing all the federal claims against these three defendants, and the claims remaining arose from one discrete, unrelated incident between Smith and those two officers, the court declines to exercise supplemental jurisdiction over his state-law negligence claims against Dr. Syed, Buchanan and Pafford. Subject to the applicable Wisconsin statute of limitations, therefore, Smith may pursue his negligence claims against these three defendants in state court.

ORDER

IT IS ORDERED that:

1. Defendants' motion for partial summary judgment (dkt. #34) is GRANTED, with respect to plaintiff Daniel Smith's Eighth Amendment deliberate indifference claims against defendants Dr. Syed, Buchanan, and Pafford.

2. The court also declines to exercise supplemental jurisdiction over Smith's state law claims against defendants Dr. Syed, Buchanan, and Pafford, which are DISMISSED without prejudice.

3. At the close of this case, the clerk of court is directed to enter judgment in favor of defendants Dr. Syed, Buchanan, and Pafford, as provided above.

Entered this 5th day of September, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge